# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| LAURA BURTON BROTHERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No.: 4:18-cv-01012-SGC |
| SOCIAL SECURITY ) | |
| ADMINISTRATION, Commissioner, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**[1]

The plaintiff, Laura Burton Brothers, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Brothers timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be reversed and remanded.

## **I. Procedural History**

Brothers has a high school education and past relevant work experience as an office manager. (Tr. at 347). In her application for DIB (the "first DIB application"), Brothers alleged she became disabled on August 20, 2012, as a result of Sjögren's

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 6).

syndrome, asthma, mitral valve prolapse, fibromyalgia, nerve damage in her lower back, and arthritis. (*Id.* at 182). Brothers later amended the alleged onset date of her disability to August 13, 2013. (*Id.* at 23). After her claim was denied, Brothers requested a hearing before an administrative law judge ("ALJ"). (*Id.*). Following initial and supplemental hearings, the ALJ issued a decision partially favorable to Brothers on September 21, 2017. (*Id.* at 23-34; 148-180). Brothers was 60 years old when the ALJ issued his decision. (*Id.* at 34, 182). The Appeals Council granted Brothers' request for review and issued a decision wholly unfavorable to Brothers. (*Id.* at 4-6). That decision became the final decision of the Commissioner. *See Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Brothers commenced this action. (Doc. 1).

She also filed a new DIB application (the "second DIB application"), alleging she became disabled on September 22, 2017, the day after the ALJ issued the decision that led to the denial of benefits on review by the Appeals Council. (Doc. 12-1 at 4). The ALJ assigned to adjudicate Brothers' second DIB application concluded Brothers was disabled as of September 22, 2017. (*Id.* at 4-8). Upon receipt of the fully favorable decision on her second DIB application, Brothers filed a motion to remand this case. (Doc. 12). Unless otherwise noted, the discussion that follows pertains to Brothers' first DIB application.

## II. Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). Furthermore, a claimant must show she was disabled between her alleged initial onset date and her date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(i) and (b). At the first step, the ALJ determined Brothers would meet the Social Security Administration's insured status requirements through December 31, 2017, and had not engaged in substantial gainful activity since August 13, 2013, the amended alleged onset date of her disability. (Tr.

at 26).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(ii) and (c). At the second step, the ALJ determined Brothers has the following severe impairments: Sjögren's syndrome, degenerative disc disease, fibromyalgia, and asthma. (Tr. at 26).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined Brothers does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. (Tr. at 26-28).

If the claimant's impairment or combination of impairments does not meet or

equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 404.1520(e). At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 404.1520(a)(4)(iv) and (e). If the claimant is capable of performing her past relevant work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(iv).

Before proceeding to the fourth step, the ALJ determined Brothers has the RFC to perform a limited range of light work. (Tr. at 28).[2] At the fourth step, the ALJ determined Brothers is not able to perform her past relevant work. (*Id.* at 32).

If the claimant is unable to perform her past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v) and (g)(1). If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will find the

---

[2] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and may require "a good deal of walking or standing . . . or . . . involve[] sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

claimant is disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1).

At the fifth step, considering Brothers' age, education, work experience, and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy that Brothers could perform (e.g., office helper, charge account clerk, new account interviewer) between the amended alleged onset date of her disability and January 12, 2017, the date on which the category in which she was placed for purposes of adjudicating her DIB application changed from "closely approaching advanced age" to "advanced age." (Tr. at 32-33). The ALJ further determined, considering Brothers' age, education, work experience, and RFC, that as of January 12, 2017, there were no jobs existing in significant numbers in the national economy that Brothers could perform. (*Id.* at 34). Therefore, the ALJ concluded Brothers was not disabled prior to January 12, 2017, but became disabled on that date. (*Id.*).

On review, the Appeals Council adopted the determinations made by the ALJ at steps one through three of the sequential analysis. (*Id.* at 4-6). The Appeals Council also adopted the ALJ's determination of Brothers' RFC. (*Id.* at 5-6). However, the Appeals Council determined at step four of the sequential analysis that Brothers' RFC allowed her to perform her past relevant work as an office manager through her date last insured. (*Id.* at 5-6). Therefore, the Appeals Council concluded Brothers was not disabled at any time through September 21, 2017, the date of the

ALJ's decision.  (*Id.* at 5-6).

## III. Standard of Review

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance."  *Id.*  A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*.  *Davis*

7

*v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

In her brief on appeal, Brothers argues (1) the ALJ was biased against her and her counsel and the bias tainted the ALJ's decision; (2) the ALJ and the Appeals Council failed to give proper weight to the opinions of Dr. Oksana Senyk and Dr. James Robinson, two of her treating physicians; (3) she has an impairment or combination of impairments that meets or equals Listing 14.10, which addresses Sjögren's syndrome; (4) the Appeals Council's determination she can perform her past relevant work as an office manager constitutes legal error and is not supported by substantial evidence; and (5) the Appeals Council's denial of benefits is not supported by substantial evidence. (Doc. 8).

In her motion to remand, Brothers seeks further consideration by the Commissioner based on the second argument made in her brief on appeal. (Doc. 12). She also seeks remand based on the fully favorable decision entered with respect to her second DIB application, which she argues constitutes newly discovered evidence that should be considered by the Commissioner with respect to her first DIB application. (*Id.*).

**A. ALJ Bias**

Brothers offers three bases for her claim the ALJ was biased against her and her counsel. First, she cites exchanges between her counsel and the ALJ, and between herself and the ALJ, during the initial hearing. (Doc. 8 at 38-40). The ALJ discouraged Brothers' counsel from eliciting testimony from Brothers that was repetitive of information contained in the record, questioned whether Brothers' counsel was prepared for the hearing, and told Brothers he did not need a medical lecture from her. (*Id.* at 38-40). Second, Brothers cites what she characterizes as the ALJ's accusation in his decision that her counsel coached Dr. Senyk and Dr. Robinson in completing evaluations of Brothers' physical capacities. (*Id.* at 40). Third, Brothers cites public statistics she alleges show the ALJ approved only 35% of claims that came before him between September 2016 and September 2017, as compared to the 50% of claims approved by other ALJs in Alabama. (*Id.* at 41).

"A presumption exists that judicial and quasi-judicial officers such as ALJs are unbiased." *Reeves v. Soc. Sec. Comm'r*, 794 F. App'x 851, 855 (11th Cir. 2019) (citing *Schweiker v. McClure*, 456 U.S. 188, 195 (1982)), *cert. denied sub nom. Reeves, Ruth E. v. Saul, Andrew M.*, 2020 WL 1326015 (U.S. Mar. 23, 2020); *see also Miles*, 84 F.3d at 1401 ("The impartiality of the ALJ is [] integral to the integrity of the [disability review] system."). "That presumption can be rebutted by showing a conflict of interest or some other specific reason warranting the ALJ's

9

disqualification." *Reeves*, 794 F. App'x at 855 (citing *Schweiker*, 456 U.S. at 195). "The party asserting a disqualifying interest bears the burden of establishing its existence." *Id.* (citing *Schweiker*, 456 U.S. at 196). "Bias is shown where an objective, fully-informed lay person would have significant doubt about a judge's impartiality." *Id.* (citing *In re Walker*, 532 F.3d 1304, 1310 (11th Cir. 2008)). "Generally, bias sufficient to disqualify a judge must stem from an extrajudicial source, except where a judge's remarks in a judicial context show such pervasive bias and prejudice that it constitutes bias against a party." *Id.* (citing *In re Walker*, 532 F.3d at 1310-11). "Judicial rulings, routine administrative efforts, and ordinary admonishments (whether or not legally supportable) to counsel and witnesses that occur during the course of judicial proceedings that neither rely upon knowledge acquired outside of such proceedings nor display a deep-seated and unequivocal antagonism rendering fair judgment impossible are inadequate grounds for recusal." *Meade v. Comm'r of Soc. Sec.*, 2020 WL 1481597, at *1 (11th Cir. Mar. 23, 2020) (citing *Liteky v. United States*, 510 U.S. 540, 556 (1994)).

Even if the comments the ALJ made to Brothers and her counsel during the hearing could be described as sharp, there is no evidence they were influenced by knowledge acquired outside of the administrative proceedings. Moreover, the comments themselves were not so pervasive or of such character as to demonstrate the ALJ held a "deep-seated and unequivocal antagonism" towards Brothers or her

counsel that would have rendered fair judgment impossible.

The same is true with respect to what Brothers characterizes as the ALJ's accusation Brothers' counsel coached Dr. Senyk and Dr. Robinson in completing evaluations of Brothers' physical capacities. To be precise, the ALJ noted the evaluations were recorded on forms prepared and submitted to the physicians by Brothers' counsel and then indicated he considered whether Brothers' counsel had coached Dr. Senyk and Dr. Robinson. Tr. at 31-32. The ALJ's statements are quoted in full in the discussion that follows regarding Brother's second argument. Here, it suffices to say there is no evidence the statements were informed by an extra-judicial source and that the statements themselves do not evince intense and unmistakable antagonism.

Finally, the undersigned easily disposes of Brothers' statistics argument. The Eleventh Circuit has held a claimant must overcome the presumption of honesty and integrity in the ALJ by presenting evidence beyond statistics alone. *See Wells v. Soc. Sec. Admin., Comm'r*, 777 F. App'x 429, 433 (11th Cir. 2019). Brothers has failed to carry this burden.

### B. Opinions of Treating Physicians

" 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and

prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. § 404.1527(a)(2)). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Id.* at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). " 'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). "Therefore, when the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some other rationale might have supported the ALJ's conclusion.'" *Id.* (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).

Moreover, "[a]bsent 'good cause,' an AJL is to give the medical opinions of treating physicians 'substantial or considerable weight.'" *Winschel*, 631 F.3d at 1179 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)). "With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly

12

articulate [the] reasons' for doing so." *Id.* at 1179 (quoting *Phillips*, 357 F.3d at 1240-41).

An opinion regarding a claimant's RFC is not a medical opinion, even if offered by a treating source, but rather is a dispositive finding for the ALJ to make and is entitled to no special significance. 20 C.F.R. § 404.1527(d)(2) and (3); *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010). However, an ALJ is still required to consider the opinion. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 834 (11th Cir. 2011).

Dr. Senyk is a pulmonary specialist who has treated Brothers since at least July 2011. (Tr. at 687). Dr. Robinson is a primary care physician who began treating Brothers in March 2009. (*Id.* at 636). Dr. Senyk completed an evaluation of Brothers' physical capacities on January 12, 2017. (*Id.* at 796). Dr. Robinson completed the same form evaluation on January 24, 2017. (*Id.* at 888). Dr. Senyk and Dr. Robinson both indicated that during an eight-hour work day Brothers could sit for no more than four hours; could stand for less than thirty minutes at a time; and would need to lie down, sleep, or sit with her legs propped at waist level or above for three hours. (*Id.* at 796, 888). Additionally, Dr. Senyk indicated Brothers' impairments would cause her to be off task between forty and fifty percent of an eight-hour work day and to miss between five and seven days of work during a thirty-day period, while Dr. Robinson indicated Brothers' impairments would cause her to

be off task forty percent of an eight-hour work day and to miss seven days of work during a thirty-day period. (*Id.*).

The ALJ paraphrased the opinions expressed by Drs. Senyk and Robinson in their respective evaluations of Brothers' physical capacities and noted they were generally consistent with each other. (*Id*. at 31). He then discussed the opinions in the context of the record as a whole, ostensibly to assign weight to the opinions:

> However, their records, nor any other treatment records, show any complaint from the claimant regarding being off-task or missing any specific number of days of work. The extreme number of estimated absences are not consistent with the treatment record dates, or any complaint shown in the treatment records. The allegations of [the evaluations] have remarkably coincidental provisions with each other, but neither appears in either physician's treatment records of the claimant for the period beginning in August 2012 (which they both cited) and both were prepared on forms submitted by the claimant's attorney. There is no clear and conclusive evidence of coaching, but when supposedly separate physicians both sign similar reports with specific allegations that are not found in their treatment records, or supported by any medical restriction or limitation imposed on the claimant during the period cited (which covers approximately five years of treatment records) there is little to support the allegations for that five-year period.
>
> Not only are there no corresponding medical restrictions (or even specifically equivalent complaints from the claimant) in the records from Dr. Senyk or from Dr. Robinson, there is no medical restriction from any acceptable medical source during that five-year period that correspond[s] to the limitations set forth in [the evaluations]. However, in giving the claimant the benefit of any doubt, these assessments are accepted as a good-faith assessment of the claimant's limitations at the time that the statements were created. However, these statements do not comprehensively assess the various factors needed in a residual functional capacity, and as a practical matter are not such to produce a different result in the overall analysis than that achieved by the residual

14

functional capacity.

*Id.* at 31-32.[3]

As stated, an ALJ may reject a treating physician's opinion on the ground it is inconsistent with a claimant's treatment records and is not required to give a treating physician's opinion on an issue reserved to the Commissioner any special significance. However, the ALJ's discussion of the opinions expressed by Dr. Senyk and Dr. Robinson in their respective evaluations of Brothers' physical capacities does not make clear whether the ALJ rejected the opinions or, notwithstanding his statements regarding the inconsistency of the opinions with Brothers' treatment records, decided to afford the opinions some weight. Moreover, to the extent the ALJ rejected the opinions, he did not state he did so because the opinions addressed an issue reserved to the Commissioner (i.e., a claimant's RFC). *See Lawton*, 431 F. App'x at 835 (rejecting Commissioner's argument ALJ did not err by failing to consider treating physician's opinion claimant could never return to work, where ALJ never said he was rejecting that opinion because it was not a medical opinion). To the extent the ALJ did afford the opinions some weight, it is not clear how much, and contrary to the ALJ's statement, the opinions, if credited, *would* produce a result different from the one to which the ALJ's RFC assessment led. During the initial

---

[3] The undersigned notes the ALJ who adjudicated Brothers' second DIB application found the opinions expressed by Dr. Senyk and Dr. Robinson in their respective evaluations of Brothers' physical capacities to be persuasive. (Doc. 12-1 at 6).

15

hearing, a vocational expert testified an employer would not tolerate an employee missing three or more days of work per month or taking more than two fifteen-minute breaks and one thirty-to-sixty-minute break each work day. (Tr. at 178-79).

Given the lack of clarity regarding the weight afforded the opinions expressed by two physicians with whom Brothers had long-standing treating relationships, the undersigned cannot determine whether the Commissioner's ultimate decision or the other determinations on which it is based, including that Brothers does not have an impairment or combination of impairments that meets or equals a Listing and has the RFC to perform her past relevant work as an office manager, are rational and based on substantial evidence. *See Winschel*, 631 F.3d at 1178-79

### C. Motion to Remand

When a district court concludes the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to a disability claim, it remands the case pursuant to sentence four of 42 § U.S.C. 405(g). By contrast, sentence six of § 405(g) permits a district court to remand a case to the Commissioner for consideration of newly discovered evidence. *See Arnold v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 772, 781 (11th Cir. 2018) (discussing the two methods of remand under § 405(g)) (citing *Ingram*, 496 F.3d at 1261; *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996)).

Brothers' motion to remand is due to be granted to the extent this case is due

to be remanded to the Commissioner for further consideration pursuant to sentence four of § 405(g) for the reasons discussed above. However, the motion is due to be denied to the extent Brothers seeks remand pursuant to sentence six of § 405(g) on the basis of the fully favorable decision entered with respect to her second DIB application.

The Eleventh Circuit has held a later favorable decision is not evidence for purposes of remand pursuant to sentence six of § 405(g). *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015). In *Hunter*, the claimant's first application for disability insurance benefits was denied by a decision finding she was not disabled on or before February 10, 2012, while the claimant's second application was granted by a decision finding she was disabled as of February 11, 2012. *Id.* at 820. Although the Eleventh Circuit acknowledged the decisions were "seemingly irreconcilable," it concluded that in light of the deferential standard applied to review of an ALJ's decision, "there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions." *Id.* at 822. More specifically, it reasoned:

> Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate. Because of that possibility, the mere existence of a later favorable decision by one ALJ does not undermine the validity of another ALJ's earlier unfavorable decision or the factfindings upon which it was premised.

*Id.*

Consistent with *Hunter*, the decision on Brothers' second DIB application alone does not constitute newly discovered evidence warranting remand of this case. In her motion to remand, Brothers cites *Lindsey v. Comm'r of Soc. Sec.*, in which the Eleventh Circuit noted that while a subsequent favorable decision is not newly discovered evidence, the evidence supporting a subsequent favorable decision may constitute newly discovered evidence. 741 F. App'x 705, 710 (11th Cir. 2018). However, Brothers identifies no evidence underlying the decision on her second DIB application that was not considered in the course of adjudicating her first DIB application. Accordingly, *Lindsay* is inapplicable here. Brothers also notes that after adopting the Eleventh Circuit's holding in *Hunter*, the Middle District of Pennsylvania concluded "the soundness of the *Hunter* analysis does not conflict with a directive that extra scrutiny of the record upon remand is warranted in a case where remand is required because the reviewing court determines that the earlier decision is not based on substantial evidence." *Blum v. Berryhill*, 2017 WL 2463170, at *12 (M.D. Pa. June 7, 2017). A decision of the Middle District of Pennsylvania is not binding precedent in this district court, and the undersigned declines to instruct the Commissioner to apply extra scrutiny to this case on remand based on Brothers' citation to *Blum* alone.

## V. Conclusion

Having reviewed the administrative record and considered all the arguments presented by the parties, the undersigned find the Commissioner's decision is not in accordance with applicable law or supported by substantial evidence. Therefore, the decision is due to be reversed and remanded for further consideration. Brother's motion to remand (Doc. 12) is due to be **GRANTED** to the extent this case is due to be remanded to the Commissioner for further consideration pursuant to sentence four of § 405(g) for the reasons discussed above. A separate order will be entered.

**DONE** this 15th day of April, 2020.

/s/ Staci G. Cornelius
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE